**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

CAMILA WARD

VERSUS

SECURE ASSET RECOVERY, INC.
AND ALAN ALVAREZ

CIVIL ACTION

17-5-SDD-EWD

## RULING

This matter is before the Court on the *Motion for Default Judgment*[1] by Plaintiff, Camila Ward ("Plaintiff").  Defendants, Secure Asset Recovery, Inc. ("SAR") and Alan Alvarez ("Alvarez")(or collectively "Defendants")[2] have never appeared in this matter nor filed an *Opposition* to this motion.  For the following reasons, the Court finds that Plaintiff's motion should be granted.

## I.    BACKGROUND

Prior to the institution of this lawsuit, Plaintiff incurred a financial obligation used primarily for personal, family or household purposes ("the Account").[3]  The Account subsequently allegedly went into default.[4]  Plaintiff contends the Account constitutes a "debt" pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a(5), and Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

Plaintiff alleges the Defendants violated the FDCPA and the Florida Consumer

---

[1] Rec. Doc. No. 25.
[2] Plaintiff abandoned her claims against original co-Defendant Recovera, Inc. after failing to obtain service of process on Recovera, Inc. and its dissolution with the Florida Secretary of State's office.
[3] Rec. Doc. No. 1, ¶ 20.
[4] *Id.* at ¶ 21.
45343

Collection Practices Act ("FCCPA") when an employee of Defendants left Plaintiff a voicemail stating that the call was from the "civil procedures division of SAR & Associates" and that "[i]t's very important that I speak to you in order to stop this from moving forward … This is a time sensitive matter. Please call us."[5] Plaintiff contends there is no "civil procedures division" of "SAR & Associates."[6] Plaintiff alleges this message was left to give her the false sense that the issue had escalated and would soon go beyond just an attempt to collect a debt, *i.e.*, that Plaintiff would be sued by Defendants.[7] Plaintiff claims that the voicemail identification of Defendants as "SAR & Associates" was intentionally misleading to give Plaintiff the impression that it was a law firm.

Plaintiff alleges SAR is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and a "third-party debt collector" as defined by Fla. Stat. § 559.55(6). Plaintiff also alleges Alvarez is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and a "third-party debt collector" as defined by Fla. Stat. § 559.55(6). SAR is a Florida corporation with its principal place of business in Florida. Alvarez is listed as President of SAR and also resides in the State of Florida.

Plaintiff claims Alvarez actively managed SAR and directed the policies of the company and either directly or indirectly participated in the debt collection efforts against Plaintiff.[8] Plaintiff alleges that the purpose of the voicemail was to falsely and deceptively represent to Plaintiff that she was about to be sued on the Account,[9] that the purpose of

---

[5] *Id.* at ¶ 39.
[6] *Id.* at ¶ 41.
[7] *Id.* at ¶¶ 40, 42-44.
[8] *Id.* at ¶¶ 32, 36.
[9] *Id.* at ¶ 45.
45343

the voicemail was an attempt to collect the debt,[10] that the voicemail conveyed information to Plaintiff, directly or indirectly, regarding the Account[11] and constituted "communication[s]" as defined by the FDCPA,[12] and that these statements and actions by Defendants and/or their employees constitute illegal communication in connection with debt collection and were done knowingly, willfully, and purposely.[13]

Plaintiff filed this lawsuit on January 5, 2017. Plaintiff alleges that the acts or omissions committed by the Defendants or their agents/employees violated 15 U.S.C. § 1692d(6) and § 1692e(2), (3), (5), (10), & (11)[14] and also violated Fla. Stat. § 559.72(9), (10) & (12).[15] The record reflects that SAR was served on January 12, 2017,[16] and Alvarez was served on March 25, 2017.[17] To date, neither Defendant has answered Plaintiff's *Complaint* or otherwise appeared. The Clerk of Court entered a preliminary default against Defendants on May 5, 2017.[18] Plaintiff now moves for a judgment of default to be entered against Defendants, and she seeks statutory and punitive damages under federal and Florida law along with attorney's fees and costs.

## II. LAW AND ANALYSIS

### A. Default Judgment

The United States Court of Appeals for the Fifth Circuit has outlined a three step process to obtain a default judgment: (1) a defendant's default; (2) a clerk's entry of

---

[10] *Id.* at ¶ 47.
[11] *Id.* at ¶ 48.
[12] *Id.* at ¶ 49.
[13] *Id.* at ¶¶ 51-52.
[14] *Id.* at ¶ 68.
[15] *Id.* at ¶ 73.
[16] Rec. Doc. No. 13.
[17] Rec. Doc. No. 14.
[18] Rec. Doc. No. 16.
45343

default; and (3) a plaintiff's application for a default judgment.[19]  The service of summons

or lawful process triggers the duty to respond to a complaint.[20]  A defendant's failure to

timely plead or otherwise respond to the complaint triggers a default.[21]  Accordingly, Rule

55 provides that the clerk must enter a party's default "[w]hen a party against whom a

judgment for affirmative relief is sought has failed to plead or otherwise defend, and that

failure is shown by affidavit or otherwise...."[22]

　　After the Clerk of Court has found a defendant to be in default, the Court may,

upon motion by a plaintiff, enter a default judgment against the defaulting defendant.[23]

Default judgments are "generally disfavored in the law" in favor of a trial upon the merits.[24]

Indeed, default judgments are considered "a drastic remedy, not favored by the Federal

Rules and resorted to by courts only in extreme situations.... [T]hey are 'available only

when the adversary process has been halted because of an essentially unresponsive

party.'"[25]  Even so, this policy is "counterbalanced by considerations of social goals,

justice and expediency, a weighing process [that] lies largely within the domain of the trial

judge's discretion."[26]  In accordance with these guidelines, "[a] party is not entitled to a

default judgment as a matter of right, even where the defendant is technically in default."[27]

---

[19] *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir.1996).

[20] *Fagan v. Lawrence Nathan Assocs.*, 957 F.Supp.2d 784, 795 (E.D.La. 2013) (citing *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 937 (5th Cir.1999)).

[21] *N.Y. Life Ins. Co.*, 84 F.3d at 141.

[22] Fed.R.Civ.P. 55.

[23] *Id.*

[24] *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) (quoting *Mason & Hanger–Silas Mason Co. v. Metal Trades Council*, 726 F.2d 166, 168 (5th Cir.1984)).

[25] *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir.1989) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C.Cir.1970)).

[26] *Rogers,* 167 F.3d at 936 (internal citations omitted).

[27] *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir.1996); *see also Nishimatsu Constr. Co. v. Hous. Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir.1975) ("[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered.").

45343

While "the defendant, by his default, admits the plaintiff's well-pleaded allegations of fact," the Court retains the obligation to determine whether those facts state a claim upon which relief may be granted.[28]

Courts have developed a two-part analysis to determine whether a default judgment should be entered against a defendant.[29] First, a court must consider whether the entry of default judgment is appropriate under the circumstances.[30] The factors relevant to this inquiry include: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion.[31] Second, a court must assess the merits of the plaintiff's claims and find sufficient basis in the pleadings for the judgment.[32]

## B. Jurisdiction to Enter Default Judgment

As Plaintiff asserts claims under the FDCPA, the Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331, which provides that: "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The Court has supplemental jurisdiction over the state law

---

[28] *Nishimatsu Constr. Co.*, 515 F.2d at 1206; *see Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (affirming the district court's denial of a default judgment because, even if the plaintiffs factual allegations were found to be true, the defendants would not have been liable under the law).

[29] *Taylor v. City of Baton Rouge*, 39 F.Supp.3d 807, 813 (M.D.La. 2014); *United States v. Chauncey*, No. 14–CV–32, 2015 WL 403130, at *1 (M.D.La. Jan. 28, 2015); *see also Fidelity & Guaranty Life Ins. Co. v. Unknown Tr. of Revocable Trust–8407*, No. 13–CV–412–PRM, 2014 WL 2091257, at *2 (W.D.Tex. May 16, 2014) (citing cases).

[30] *See Lindsey v. Price Corp.*, 161 F.3d 886, 893 (5th Cir.1998).

[31] *Id.*

[32] *See Nishimatsu Constr. Co.*, 515 F.2d at 1206.

45343

claims pursuant to 28 U.S.C. § 1367. Nevertheless, the Court must determine if it has personal jurisdiction over the Defendants who are citizens of the State of Florida.

To comport with constitutional due process, a plaintiff must show that: (1) Defendants purposefully availed themselves of the benefits and protections of Louisiana law, thereby establishing "minimum contacts" with Louisiana such that Defendants could reasonably have anticipated being haled into court there; and (2) under the circumstances, the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice."[33] The minimum contacts requirement can be met through contacts sufficient to confer either general or specific jurisdiction.[34] General jurisdiction can be exercised when a defendant's contacts with the forum state are substantial, continuous, and systematic, though unrelated to the litigation.[35] Specific jurisdiction exists "[w]hen a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities."[36]

In this case, Plaintiff has alleged that Alvarez created the collection policies and procedures employed by SAR, managed or otherwise controlled the daily collections operations of SAR, oversaw the application of collection policies and procedures, "drafted, created, approved, and ratified the tactics and scripts used by … SAR and their

---

[33] *Command–Aire Corp. v. Ontario Mechanical Sales and Service Inc.*, 963 F.2d 90, 94 (5th Cir. 1992)(citing *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); and *Asarco, Inc. v. Glenara, Ltd.* ., 912 F.2d 784 (5th Cir.1990)); *see also Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir.1985) ("When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident.").
[34] *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (citation omitted).
[35] *Id.*
[36] *Id.* (citation omitted).
45343

employees and agents" in debt collection, and "had knowledge of, approved, participated in, ratified and benefitted financially from the unlawful debt collection practices" used against Plaintiff.[37]   Based on these uncontroverted allegations, the Court finds (1) that SAR and Alvarez purposefully availed themselves of the benefits and protections of Louisiana law, thereby establishing "minimum contacts" with Louisiana such that they could reasonably have anticipated being haled into court there; and (2) under the circumstances, the exercise of personal jurisdiction against them "does not offend traditional notions of fair play and substantial justice."[38]   As the Fifth Circuit has explained:

> When a nonresident defendant commits a tort within the state, or an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state, including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor and the causes of actions arising from its offenses or quasi-offenses. Even an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct.[39]

Here, Plaintiff has alleged with sufficient detail that Alvarez and SAR took actions outside of Louisiana that were highly likely to result in serious harm within the state. The alleged acts were aimed at no other state but Louisiana, and were aimed at Plaintiff specifically. Plaintiff alleges that serious harm resulted from that conduct; thus, she has made a prima facie showing of personal jurisdiction.[40]   Further, Defendants have failed to appear and/or offer anything to rebut this showing.

---

[37] Rec. Doc. No. 1, ¶ 55.
[38] *Command–Aire Corp.*, 963 F.3d. at 93–94.
[39] *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 628 (5th Cir.1999) (internal citations omitted).
[40] Love N' Care, Ltd., 438 F.3d at 469
45343

Finally, exercising personal jurisdiction over SAR and Alvarez would not "offend traditional notions of fair play and substantial justice" based on "the burden on the defendant, the interests of the forum State, ... the plaintiff's interest in obtaining relief ... the interstate judicial system's interest in obtaining the most efficient resolution of controversies[,] and the shared interest of the several States in furthering fundamental substantive social policies."[41]   The burden on Defendants does not appear to be particularly burdensome.  Several of the other factors mentioned in *Asahi* support a finding that exercise of personal jurisdiction in Louisiana is fair and just. The alleged misconduct took place in Louisiana, and Plaintiff may not have recourse to seek relief in any other forum.  Nothing before the Court suggests that it would be more efficient to resolve the claims in another state or that any other state has an interest in resolving the claims. Therefore, the Court may constitutionally exercise personal jurisdiction over SAR and Alvarez.

## C. Entitlement to Default Judgment

As set forth above, the Court must determine whether the entry of default judgment is appropriate under the circumstances by considering the *Lindsey* factors. As reflected by the record, the Defendants have failed to file an *Answer* or a motion under Rule 12 in response to the *Complaint*.  As such, there are no material facts in dispute.  Further, the grounds for granting a default judgment against Defendants are clearly established, as evidenced by the action's procedural history and the Clerk's entry of default, outlined above.  Nothing before the Court suggests that the Defendants' failure to respond or

---

[41] *Asahi*, 480 U.S. at 113 (citations omitted).
45343

appear was the result of either good faith mistake or excusable neglect. Finally, Defendants' failure to file any responsive pleading or motion mitigates the harshness of a default judgment.[42] The Court is not aware of any facts that would lead it to set aside the default judgment if challenged by the Defendants. Thus, the Court finds that the *Lindsey* factors weigh in favor of default.

The Court must also decide if Plaintiff's pleadings provide a sufficient basis for a default judgment against Defendants. Plaintiff brings this action under the FDCPA and the FCCPA § 599.77(2). The FDCPA, 15 U.S.C. § 1692 *et seq.*, imposes civil liability on "debt collector[s]" for certain prohibited debt collection practices. The Act regulates interactions between consumer debtors and "debt collector[s]," defined to include any person who "regularly collects ... debts owed or due or asserted to be owed or due another."[43] The Court agrees, and no argument has been submitted to the contrary, that Defendants satisfy the FDCPA definition of "debt collectors." 15 U.S.C. § 1692(e) provides, in pertinent part, as follows:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
>  ***
>
> (2) The false representation of—
>  (A) the character, amount, or legal status of any debt; or
>  (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
>
> (3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

---

[42] *See Taylor*, 39 F.Supp.3d at 814.
[43] 15 U.S.C. §§ 1692a(5),(6).
45343

*** 

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

***

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

The Florida Consumer Collection Practices Act, F.S.A. § 599.72 states, in pertinent

part, as follows:

In collecting consumer debts, no person shall:

***

(9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

***

(11) Communicate with a debtor under the guise of an attorney by using the stationery of an attorney or forms or instruments that only attorneys are authorized to prepare.

(12) Orally communicate with a debtor in a manner that gives the false impression or appearance that such person is or is associated with an attorney.

Plaintiff alleges, and the Court must take as true, that the representations by

Defendants that they were calling regarding the "civil procedures division" and that it was

"very important that I speak to you," and "to stop this from moving forward" because "this

45343

is a time sensitive matter," were made for the purpose of causing Plaintiff to believe that legal action was being taken against her on the Account.

Plaintiff further alleges that Defendants have no civil procedures division, never intended to sue, never did sue, and failed to inform Plaintiff via voicemail that the caller was a debt collector. Finally, Plaintiff alleges that this false information was communicated knowingly, willfully, and to be purposely deceptive. Plaintiff maintains these uncontroverted facts sufficiently support Plaintiff's claims of Defendants' liability under both the FDCPA and the FCCPA. The Court agrees.

### D. Damages

A defaulting defendant "concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages."[44] A court's award of damages in a default judgment must be determined after a hearing, unless the amount claimed can be demonstrated "by detailed affidavits establishing the necessary facts."[45] If a court can mathematically calculate the amount of damages based on the pleadings and supporting, a hearing is unnecessary.[46] Plaintiff seeks only statutory damages under the relevant statutes. Thus, because the damages sought here are capable of mathematical calculation, there is no need for a hearing.

Plaintiff seeks damages from Defendants in the amount of $11,530.00, which represents statutory damages of $1,000.00 under the FDCPA, statutory damages in the amount of $3,000.00 under the FCCPA, and attorneys' fees and costs in the amount of

---

[44] *Ins. Co. of the W. v. H & G Contractors, Inc.*, 2011 WL 4738197, *4 (S.D. Tex., Oct. 5, 2011).
[45] *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir.1979).
[46] *Joe Hand Promotions, Inc. v. Alima*, No. 3:13–CV–0889–B, 2014 WL 1632158, at *3 (N.D.Tex. Apr. 22, 2014) (citing *James v. Frame*, 6 F.3d 307, 310 (5th Cir.1993)).
45343

$7,530.00 under 15 U.S.C. § 1692k(a)(3) and F.S.A. § 599.77(2).

Under the FDCPA, Plaintiff may recover "any actual damages sustained" as a result of a debt collectors failure to comply with the FDCPA and "such additional damages as the court may allow, but not exceeding $1,000."[47]  In exercising its discretion to award "additional damages," the Court should consider the "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."[48]  Further, "in the case of any successful action to enforce the [ ] liability [under the FDCPA], the costs of the action, together with [ ] reasonable attorney's fee[s] as determined by the court" may be awarded.[49]  The Fifth Circuit has elaborated that "[t]he language of the statute places explicit conditions on an award of additional damages which must be approved by the court and attorney's fees which are only available where the plaintiff has succeeded in establishing that the defendant is liable for actual and/or additional damages."[50]  The Court finds that Plaintiff is entitled to $1,000.00 in statutory damages under the FDCPA.

Plaintiff also claims she is entitled under the FCCPA to statutory damages in the amount of $1000.00 per violation, for a total of $3,000.00.  However, "[t]he Eleventh Circuit has not decided whether the FCCPA limits a plaintiff's statutory damages to $1,000 per action or $1,000 per violation and district courts disagree as to the proper interpretation."[51]  There are several Florida district court cases that hold that statutory

---

[47] 15 U.S.C. § 1692k.

[48] *Guajardo v. GC Servs., LP*, 498 Fed.Appx. 379, 382 (5th Cir. 2012).

[49] *Johnson v. Eaton*, 80 F.3d 148, 150 (5th Cir.1996)(citing 15 U.S.C. § 1692k).

[50] *Id.* at 151.

[51] *Perez-Guma v. Nissan Motor Acceptance Corp.*, No. 17-14232, 2017 WL 5179913, *3 (S.D. Fla. Nov. 7, 2017). *Compare Arianas v. LVNV Funding LLC*, 54 F. Supp. 3d 1308, 1310 (M.D. Fla. 2014) ("U.S. District Courts in Florida have either expressly stated that the FCCPA limits statutory damages to $1,000 per action or awarded plaintiffs no more than $1,000 per action, even when a series of FCCPA violations exist.")
45343

damages awarded to a plaintiff under the FCCPA are limited to no more than $1,000.00 per action, even when a series of FCCPA violations exist.[52]  Considering that the majority of jurisprudence supports a limit under the FCCPA of $1,000.00 per action, not per violation, the Court will award Plaintiff statutory damages in the amount of $2,000.00 - $1,000.00 under the FDCPA and $1,000.00 under the FCCPA.  The Court declines to award punitive damages on a default judgment.

### E.  Attorneys' Fees

Plaintiff seeks reasonable attorneys' fees and costs in the amount of $7,530.00. Both the FDCPA and the FCCPA allow for recovery of attorneys' fees and costs for prevailing plaintiffs.[53]   Plaintiff seeks an award of attorneys' fees in the amount of $6,840.00 and costs in the amount of $690.00, comprised of 22.8 hours of attorney time at an hourly rate of $300 per hour.[54]  Plaintiff contends the hourly rate of her attorney, Jeffrey D. Wood, is commensurate with the attorney's experience and training and because he is in his eleventh year of practice and his eighth year of focus on FDCPA cases.[55]  Plaintiff also claims her counsel has been involved in the litigation and/or

---

(citations omitted), *with Beeders v. Gulf Coast Collection Bureau*, 632 F. Supp. 2d 1125 (M.D. Fla. 2009) (holding that a plaintiff can recover up to $1,000 for each count alleging an FCCPA violation).  *See also Salvatore v. Nationstar Mortgage, LLC*, No. 8:15-cv-1390-T-24AEP, 2015 WL 5970707 at *3 (M.D. Fla., Tampa Div. Oct. 13, 2015)("In the event Plaintiff alleges and proves more than one violation of the FCCPA, Plaintiff is limited to a total statutory award of $1,000 in this action for violations of the FCCPA pursuant to section 559.77(2), Florida Statues.").

[52] *Arianas v. LVNV Funding LLC*, 54 F. Supp. 3d at 1310 (citing *Tacoronte v. Tate & Kirlin Associates*, No. 6:13–CV–331–Or1–37DAB, 2013 WL 5970720, at *2 (M.D.Fla. Nov. 8, 2013) (holding "courts properly decline to multiply the $1,000 statutory award by each violation alleged in a single count under the FCCPA"); *Smith v. Royal Oak Financial Services, Inc.*, No. 3:11–CV–543–J–34JRK, 2012 WL 3290153, at *5 (M.D.Fla. June 18, 2012) (awarding a plaintiff $1,000 as the "maximum award of statutory damages" under the FCCPA and Fair Debt Collection Practices Act ("FDCPA")).

[53] *See* 15 U.S.C. § 1692k(a)(3); Fla. Stat. § 559.77(2).

[54] Rec. Doc. No. 25-2.

[55] Rec. Doc. No. 25-3.

45343

settlement of over 500 FCDPA cases and claims.[56]

In the Fifth Circuit, the "lodestar" method is used to calculate reasonable attorneys' fees.[57] The "lodestar" analysis involves a two-step procedure.[58] Initially, the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers. Then, the court must multiply the reasonable hours by the reasonable hourly rates.[59] The product is the "lodestar," which the court either accepts or adjusts upward or downward, depending on the circumstances of the case, assessing the factors set forth in *Johnson v. Georgia Highway Express, Inc.*[60]

A court's discretion in fashioning a reasonable attorney's fee is broad and reviewable only for an abuse of discretion, *i.e.*, it will not be reversed unless there is strong evidence that it is excessive or inadequate, or the amount chosen is clearly erroneous.[61] To determine a reasonable fee, a court must provide a concise but clear explanation of its reasons for the fee award, making subsidiary factual determinations regarding whether the requested hourly rate is reasonable, and whether the tasks reported by counsel were duplicative, unnecessary, or unrelated to the purposes of the lawsuit.[62] The Fifth Circuit has noted that its "concern is not that a complete litany be given, but that the findings be complete enough to assume a review which can determine whether the court has used

---

[56] *Id.*

[57] *In re Fender,* 12 F.3d 480, 487 (5th Cir.1994), *cert. denied*, 511 U.S. 1143, 114 S.Ct. 2165, 128 L.Ed.2d 888 (1994).

[58] *Louisiana Power & Light Company v. Kellstrom*, 50 F.3d 319, 323-324 (5th Cir.1995) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

[59] *Id.* at 324.

[60] 488 F.2d 714, 717–19 (5th Cir.1974).

[61] *Hopwood v. State of Texas*, 236 F.3d 256, 277, n.79 (5th Cir. 2000); *Hensley*, 461 U.S. at 436–37.

[62] *Hensley*, 461 U.S. at 437–39; *Associated Builders & Contractors v. Orleans Parish School Board,* 919 F.2d 374, 379 (5th Cir. 1990).

45343

proper factual criteria in exercising its discretion to fix just compensation."[63]

In assessing the reasonableness of attorneys' fees, the court must first determine the "lodestar" by multiplying the reasonable number of hours expended and the reasonable hourly rate for each participating attorney.[64] The party seeking the fee bears the burden of proof on this issue.[65]

The Court begins by determining whether the number of hours claimed by Plaintiff's attorney is reasonable.[66] Local Rule 54 provides specific guidance regarding how this burden is met, stating: "the party desiring to be awarded such fees shall submit to the court a contemporaneous time report reflecting the date, time involved, and nature of the services performed. The report shall be in both narrative and statistical form and provide hours spent and justification thereof."[67] "Where the documentation of hours is inadequate, the district court may reduce the award accordingly."[68]

The Court must also determine if the hourly rate of $300/hour for Attorney Jeffrey D. Wood is reasonable given counsel's ability, competence, experience, and skill. Further, an attorney's reasonable hourly rate should be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."[69] The Fifth Circuit has emphasized that "the relevant market for purposes

---

[63] *Brantley v. Surles*, 804 F.2d 321, 325–26 (5th Cir.1986).
[64] *See Hensley*, 461 U.S. at 433; *Green v. Administrators of the Tulane Educ. Fund*, 284 F.3d 642, 661 (5th Cir. 2002); *Associated Builders & Contractors,* 919 F.2d at 379; *Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1047 (5th Cir.1998); *Kellstrom*, 50 F.3d at 324.
[65] *See Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir.1996); *Kellstrom,* 50 F.3d at 324.
[66] *Migis*, 135 F.3d at 1047.
[67] M.D. La. LR54(b).
[68] *Cooper v. Pentecost*, 77 F.3d 829, 832 (5th Cir. 1996) (quotation marks omitted); *see also Kellstrom*, 50 F.3d at 324 ("[A] district court may reduce the number of hours awarded if the documentation is vague or incomplete.").
[69] *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also Leroy v. City of Houston*, 906 F.2d 1068, 1078–79 (5th Cir.1990) ("In evaluating an attorneys' fees award, we are guided by the overriding principles 45343

of determining the prevailing rate to be paid in a fee award is the community in which the district court sits."[70]

The Court takes no issue with counsel's billing statement and the amount of hours claimed in this case considering some complications in locating Defendants. However, the Court believes the hourly rate submitted is too high. In *Cobb v. A&S Collection Associates, Inc.*, the plaintiff obtained a default judgment under the FDCPA.[71] This Court determined that $210/hour was reasonable in this district for an attorney who, at the time, had 21 years of experience primarily in litigation on behalf of consumers under the FDCPA.[72] Notably, this attorney obtained a default judgment under the FDCPA and billed 14.6 hours himself and 1.1 hours for his paralegal.[73] In *Fagan v. Lawrence Nathan Associates, Inc.*, the Eastern District court[74] found an hourly rate of $250 appropriate in a case brought under the FDCPA for an attorney with 28 years of experience.[75] In *Bradford v. Telerecovery*, the Eastern District court rejected the request by an attorney, who had three years of experience litigating FDCPA cases, for a fee of $450/hour for 20 hours of work because the attorney failed provide information regarding his reputation, special skills, or prevailing rates for similar attorneys in the district.[76]

---

that a reasonable attorney's fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys ...." (quotation marks and alterations omitted)).

[70] *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (quotation marks omitted).

[71] No. 06-238-JJB, 2011 WL 4433579 (M.D. La. Sept. 21, 2011).

[72] *Id.* at *4.

[73] *Id.*

[74] The prevailing market fee is generally determined by affidavits filed by attorneys practicing in the area. *Ball v. LeBlanc*, 2015 WL 4454779 at *3 (M.D. La. July 20, 2015), quoting *Tollett*, 285 F.3d at 368. However, markets of comparable sizes can be informative in determining the prevailing market rate of another district. *See e.g., Strogner v. Sturdivant*, No. 10–125–JJB–CN, 2011 WL 6140670, at *2 n.4 (M.D.La. Dec. 9,2011) (**finding that the rate in New Orleans could help determine the rate in Baton Rouge because after Hurricane Katrina, the size of New Orleans and Baton Rouge became more comparable**); *Advocacy Center v. Cain,* 2014 WL 1246840, at *7 n. 6 (M.D. La. Mar. 24, 2014)(same).

[75] 957 Fed. Supp.2d 784, 804 (E.D. La. 2013).

[76] No. 16-2933, 2017 WL 2573947 at *10 (E.D. La. June 14, 2017).

45343

Plaintiff's counsel attests that, "[u]pon information and belief, it is not uncommon for attorneys with my skill, background, and knowledge practicing in this district to charge $300.00 per hour, including in consumer protection law."[77]  The cases cited above belie the suggestion that attorneys in this district, in this practice area, with this level of experience, are being awarded $300/hour.   As reflected by the cases discussed above, an attorney with 21 years of experience was awarded $210/hour, and an attorney with 28 years of experience was awarded $250/hour.  The Court cannot find it reasonable to award an attorney with 11 years of experience $300/hour for this type of case, and Plaintiff's counsel has presented nothing beyond his "information and belief" to justify such an award.

Accordingly, the Court will reduce counsel's reasonable hourly rate to $200. Therefore, having determined the "lodestar" reasonable hourly rate and hours billed, and after consideration of the *Johnson* factors,[78] the Court finds that an attorney's fee in the amount of $4,560.00 is reasonable.  The award of costs in the amount of $690.00 is granted.

---

[77] Rec. Doc. No. 25-3 ¶8.
[78] The twelve factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Johnson*, 488 F.2d 714, 717-19 (5th Cir.1974).  Counsel presented no argument of the *Johnson* factors to the Court.
45343

## III.    CONCLUSION

For the reasons set forth above, Plaintiff's *Motion for Default Judgment* [79] is

GRANTED.

*Judgment* shall be entered accordingly.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>April 26, 2018</u>.


_____

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[79] Rec. Doc. No. 25.
45343